ESTATE OF A. PLUMER AUSTIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9357. Promulgated February 28, 1928.

*K. N. Parkinson, Esq.*, and *John K. Hulse, C. P. A.*, for the petitioner.

*R. E. Copes, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: With reference to the claimed bad debt deduction, the record leaves in doubt the amount of the deduction claimed, and the taxable period for which it is claimed. In the pleadings the error assigned is that the Commissioner failed "to include among deductions from taxable income for the period July 10, 1920, to December 31, 1920, an item of $56,155.21" as the loss sustained on notes for "money loaned to J. V. Thompson * * * and determined to be worthless and charged off within the period in question." It is alleged in the statement of facts, and admitted in the answer that the amount due the decedent on the judgments was $45,556.47. At the hearing evidence was introduced only as to the judgment for $44,558.47. In neither the pleadings nor the evidence offered is the alleged bad debt stated in a specific sum. It is alleged and proved that 5 per cent of the judgment was paid to decedent and that petitioner was advised that an additional 5 per cent of the judgment would be paid, but there is no allegation or proof of any specific sum having been paid or to be paid on the judgment. It was then alleged, and some evidence offered, that 90 per cent of the judgment was worthless and charged off as a bad debt, but the exact amount of the debt is not disclosed. The petitioner is equally vague and indefinite as to the taxable period in which the debt was ascertained worthless and charged off, as appears from the findings of fact. Such confusion of proof of essential facts makes impossible an accurate determination of the issue and, were no other defect present, would require a ruling adverse to petitioner.

Aside from this lack of definiteness in the pleadings and proof, upon which our decision on this issue might well rest, it is evident that the petitioner here seeks a deduction, as a bad debt, for a portion only of the total debt. It is not claimed that the entire judgment, or the unpaid balance thereof, was worthless and charged off in either taxable period. It is claimed that the petitioner ascertained 90 per cent of the judgment (in what amount does not appear) to be worthless and charged off that amount as a bad debt (in what period does not appear). At the time of this alleged ascertainment of worthlessness and charge-off 95 per cent of the judgment remained due, so that the petitioner seeks to carry 5 per cent of the judgment as good and collectible and to charge off 90 per cent as uncollectible. The Revenue Act of 1918, under which this case comes, makes no provision for the deduction of a portion of a debt ascertained to be

worthless and charged off. (See *Appeal of Steele Cotton Mill*, 1 B. T. A. 299, and *Minnehaha National Bank* v. *Commissioner*, 8 B. T. A. 401.) The respondent did not err in denying the deduction claimed.

The sum of $9,105.88 was due to the decedent as compensation for services as a member of the Thompson Creditors Protective Committee and remained unpaid at the date of his death. This debt was included in decedent's gross estate for Federal estate tax purposes in the estimated amount of $10,000. The correct amount of the debt, $9,105.88, was paid to the petitioner in September, 1921, and reported by it as taxable income of the estate for 1921. The value of this debt at the date of decedent's death was $9,105.88. Both the decedent and the petitioner were, at all times material here, on the cash receipts and disbursements basis. The petitioner contends that the sum received in 1921 was not taxable income to it, but was merely the conversion of a capital asset from which no gain was derived, and that it erroneously reported the same as taxable income in its tax return for 1921. The respondent maintains that this sum was taxable income to the petitioner for 1921, the year in which it was received, and that it was correctly reported as such. We sustain the petitioner.

The debt due to the decedent at the time of his death passed to the petitioner as a part of the corpus of the estate. It was a capital asset and at the date of acquisition by the petitioner its value was $9,105.88. When the debt was paid the petitioner acquired nothing in addition to what it previously owned. The payment simply reduced to cash an asset of the same value as the amount of money received, and thus was nothing more than a change in the form of a part of the corpus. Had the decedent lived and collected the sum due him for services, the amount received might have been taxable income to him, but it does not follow that it was taxable income to the petitioner. The decedent and the petitioner are separate and distinct taxable entities. The estate is taxable only on the income derived by it. The revenue laws do not impose an income tax upon the corpus of an estate or upon the conversion of a part thereof into the cash equivalent of its value at date of acquisition. (See *William G. Frank* v. *Commissioner*, 6 B. T. A. 1071; *Walter R. McCarthy, Executor,* v. *Commissioner,* 9 B. T. A. 525; *Nichols* v. *United States,* 64 Ct. Cls. 241; and *United States* v. *Carter,* 19 Fed. (2d) 121.)

The receipt of $9,105.88 by the petitioner in 1921 in payment of the debt due for services rendered by the decedent was not taxable income to it and was erroneously included as income for 1921.

At the time of his death the decedent owned 200 shares of the capital stock of the Fayette Title & Trust Co., a close corporation

with a total of 1,500 shares of stock outstanding. This stock was valued at $300 per share for both Federal estate tax and state inheritance tax purposes. The stock was not active on the market and there was no record of any sales of stock prior or subsequent to decedent's death, except the 200 shares sold by petitioner. The petitioner sold the 200 shares on January 3, 1921, to two individuals. Eighty-five shares were sold for cash at $550 per share, and 115 shares were sold for cash and notes at $700 per share. The decedent was the president of the bank and his death necessitated the election of a successor. Between the date of decedent's death and date of sale of his stock, there was a contest between different groups in the bank for the office of president, which in some degree, at least, affected the selling price of this stock. The petitioner contends that the value of the stock at the date of decedent's death was $636.25, the average price received upon the sales in 1921, and that no taxable gain was derived. The respondent determined that the value of the stock at the date of decedent's death was $300 per share and that the difference between such value and the amount received from the sales in 1921 is taxable gain.

The burden is upon the petitioner to prove that the respondent erred in his determination of value. The petitioner relies solely upon the two sales of the stock in question to establish its value at the date of decedent's death. No evidence was offered of the book value of the stock, or the net worth of the corporation, or the earnings of the corporation, or dividends paid or authorized by the corporation, or the assets of the corporation, as of the date of decedent's death, or of any other facts sufficient to establish the fair value of this stock.

This stock may have been worth more than $300 per share at the date of decedent's death, but the record fails to afford us any basis upon which to determine what the actual value was. We may not indulge in speculation to supply a shortage of evidence. The sale of 200 shares of this stock approximately six months after the decedent's death was under peculiar circumstances tending to inflate the price and is not a proper measure of fair market value at the death of decedent. The petitioner having offered no other evidence of value, we must hold that the petitioner has failed to establish that the respondent erred in his valuation of the stock.

At the hearing and in its brief the petitioner asserted the right to compute and return the income derived from the sale to Core of the 115 shares of stock upon the installment basis, as provided in section 212 (d) of the Revenue Act of 1926, made retroactive by section 1208 of that Act. Section 212 (d) provides that in the case of a casual sale of personal property for a price exceeding $1,000, where the

initial payments do not exceed one-fourth of the purchase price, the income may be returned on the installment basis. The concluding sentence of paragraph (d), section 212, is as follows:

As used in this subdivision the term "initial payments" means the payments received in cash or property *other than evidences of indebtedness of the purchaser* during the taxable period in which the sale or other disposition is made. (Italics ours.)

Under the general rule of law the giving of notes does not, in the absence of evidence of an express agreement to that effect, constitute payment of the obligation or extinguish the original debt. This is the law in Pennsylvania, where this case arose. *Kean* v. *DuFresne*, 3 Serg. & R. 233; *Leighty* v. *Susquehanna, etc. Co.*, 14 Serg. & R. 434. As said in 21 R. C. L. 71, the above "doctrine proceeds on the obvious ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. That a mere promise to pay can not, of itself, be regarded as an effective payment is manifest." The law being as stated, it will be presumed that the notes were not given or received as payment. They were "evidences of indebtedness of the purchaser" and did not defeat the right of petitioner to the benefit of section 212(d). This ruling is not in conflict with the previous rulings of the Board holding that notes are "property" which may, within certain limits, properly be included in invested capital.

The total payments received within the taxable year amounted to $500. The balance of the purchase price was represented by notes due one and two years, respectively, after date. It follows that petitioner is entitled to return the income of this sale upon the installment basis and its taxable income for 1921 should be recomputed accordingly.

*Judgment will be entered on 15 days' notice, under Rule 50.*