## SANBURN v. UNITED STATES.

### Civ. A. No. 3434.

District Court, D. Massachusetts.

Dec. 18, 1947.

Clarence R. Brooks, of Springfield, Mass., for plaintiff.

William T. McCarthy, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and Mamie S. Price, Special Assts. to the Atty. Gen., for defendant.

FORD, District Judge.

This is a suit to recover alleged overpayment in March, 1942, of income taxes for the year 1938 in the amount of $2,035.28, with interest of $360.19.

The facts are stipulated and adopted by this court as its findings of facts. They are as follows:

Willis H. Sanburn, the husband of Maud A. Sanburn, the plaintiff in this action, was a stockholder in the Hartfield Realty Company, a Massachusetts corporation, when, on March 19, 1923, that company executed a note secured by a mortgage upon real estate owned by it in the amount of $600,000 to the Springfield Institution for Savings. Contemporaneously Mr. Sanburn, together with George R. Ford, John F. Gaffey, and others, executed and delivered to this same bank a joint and several guaranty of this indebtedness.

In 1925 Willis H. Sanburn died testate, leaving his widow, Maud A. Sanburn, his sole beneficiary. Under his will Mrs. Sanburn acquired, among other things, 270 shares of the common stock of the Hartfield Realty Company, par value $100, reported in the estate tax return and accepted at a value of $80 a share. During that year she gave to her son, Justus C. Sanburn, 20 shares of this common stock. Subsequently, between 1927 and 1932, Mrs. Sanburn purchased 230 additional shares of the common stock of this company at a total cost of $23,000. In addition to the purchase of common stock this taxpayer, in 1932 and 1933, advanced money to the Hartfield Realty Company in a total amount of $12,260.36. On September 1, 1933 the company liquidated these advances made by this taxpayer by the issue to her of 125 shares of preferred stock of the company.

In 1937 the balance due upon the note and mortgage held by the Springfield Institution for Savings was $320,000 and Hartfield Realty Company, the maker, was, in accordance with the terms thereof, in default. The Springfield Institution for Savings brought suit in 1937 in the Superior Court for Hartford County, Connecticut, against George R. Ford and John F. Gaffey under the guaranty. The said George R. Ford and the said John F. Gaffey immediately placed the remaining guarantors on notice that if they, or either of them, were compelled to satisfy a judgment obtained by the Springfield Institution for Savings, they would look to the other guarantors for contribution as co-sureties. By reason of the undertaking of Willis H. Sanburn on the guaranty Maud A. Sanburn, as sole legatee of the said Willis H. Sanburn, was, by the provisions of General Laws, Chapter 197, Sections 28 and 29, liable, to the extent of any property inherited from her husband, to any guarantor for a contributive share of any sum paid by such guarantor to the bank.

The value of the property received by Maud A. Sanburn under the will of her husband, Willis H. Sanburn, was in excess of the amount claimed in this suit to be a loss.

Ford was released by the bank from any further liability as a guarantor by payment of $100,000, and was released from any contingent liability to the other guarantors by surrendering all of his stock in the Hartfield Realty Company and releasing the company from any indebtedness of $30,000 which it owed him. Gaffey made no payment and was not released on the guaranty.

Contemporaneously with the settlement of the action against Ford, the plaintiff, in July, 1938, obtained a release from all of the guarantors to whom she was or might become liable as co-surety by the payment of $7,500, and the surrender of all of the stock held by her in the Hartfield Realty Company.

In her income tax return for 1938 Mrs. Sanburn claimed a deduction for loss in the sum of $35,130.18. The Commissioner of Internal Revenue disallowed this deduction, holding that any liability for payment of the note to the Springfield Institution for Savings was a liability of the estate of Willis H. Sanburn and not a personal liability of this taxpayer. Income tax of $2,035.28, with interest of $360.19, a total of $2,395.47, was assessed and this amount was paid by the taxpayer in March, 1942, and is the subject of this suit.

The sole question presented here is whether the plaintiff suffered a deductible

896

loss for income tax purposes under the provisions of Section 23(e) (2) of the Revenue Act of 1938,[1] by the payment of $7,500 and the surrender of the stock held by her in the Hartfield Realty Company.

The plaintiff contends that the General Laws of Massachusetts, Ch. 197, Sections 28 and 29[2] imposed upon her a personal liability under her husband's contract of guaranty and that she suffered a deductible loss for income tax purposes under Section 23(e) (2) of the Revenue Act of 1938.

It seems plain that the policy underlying Sections 28 and 29 of Ch. 197 of the General Laws of Massachusetts was to make all property of a decedent liable for all the debts of the decedent. Bassett v. Drew, 176 Mass. 141, 143, 57 N.E. 384.

The plaintiff here, in securing a release from the guaranty undertaken by her husband, was disencumbering the assets of her husband's estate from an obligation which had been undertaken by her husband-testator, not from any personal obligation of her own. Obviously the plaintiff was not indebted to any guarantor by virtue of any contract of guaranty which was signed by her and, except for the fact that she was a recipient of the estate of her husband under his will, no liability attached to her. The liability arose out of a contract made by her husband. She made none. It is true the Massachusetts statute provided for enforcement of liability against her to the extent she profited by her legacy. But this was not a personal liability of the plaintiff's. It was a liability of her husband's enforced against the assets of his estate and it had the effect of compelling a restoration of her husband's estate in a sufficient amount to satisfy a liability of her husband's. Her liability was merely based on her possession of property which could be reached for the payment of her husband's obligations, both fixed and contingent. Cf. New York Trust Co. v. Brewster, 241 Mass. 155, 158, 134 N.E. 616. It is true, from a practical standpoint, the plaintiff was out-of-pocket and would have profited from her husband's estate to a greater extent if she did not buy her peace on the contract of guaranty, but it was her husband's estate that was liable to satisfy his debts and in liquidating that debt she was merely returning or restoring part of his estate, not her own. She suffered no loss of her own. This seems plain when it is considered that what the plaintiff took from

---

[1] Revenue Act of 1938, Ch. 289, 52 Stat. 447.

"Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:
\* \* \* \* \* \* \*
"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise
—\* \* \*
"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;
\* \* \* \* \* \* \*"
26 U.S.C.A. Int.Rev.Code, § 23(e) (2).

[2] "Section 28. Liability of heirs, etc., after settlement of estate. After the settlement of an estate by an executor or administrator, and after the expiration of the time limited for the commencement of actions against him by the creditors of the deceased, the heirs, next of kin, devisees and legatees of the deceased shall be liable in the manner provided in the following sections for all debts for which actions could not have been brought against the executor or administrator, and for which provision is not made in the preceding sections."

"Section 29. Enforcement of liability. A creditor whose right of action accrues after the expiration of said time of limitation, and whose claim could not legally be presented to the probate court, or whose claim, if presented, has not been allowed, may, by action commenced within one year next after the time when such right of action accrues, recover such claim against the heirs and next of kin of the deceased or against the devisees and legatees under his will, each of whom shall be liable to the creditor to an amount not exceeding the value of the real or personal property which he has received from the estate of the deceased. But if by the will of the deceased any part of his estate or any one or more of the devisees or legatees is made exclusively liable for the debt in exoneration of the residue of the estate or of other devisees or legatees, such provisions of the will shall be complied with, and the persons and estate so exempted shall be liable for only so much of the debt as cannot be recovered from those who are first chargeable therewith."

her husband at his death was his net estate, i.e., the corpus encumbered by a contingent liability on the contract of guaranty. Whatever amount was paid in discharging the liability on that contract was not a part of the net estate and in paying it she suffered no loss, although if her husband had paid it in his lifetime the amount paid would have been deductible by him from his income.

Let us suppose that the executor of her husband's estate had settled or paid this contingent liability after the husband's death, it seems that it would not be deductible by the executor for income tax purposes, as debts owed by the estate at the time of the decedent's death have no effect upon the income of the estate when they later are paid. See Estate of Jacob S. Hoffman v. Commissioner, 36 B.T.A. 972, 973.

The fact that the liability here was contingent rather than accrued, as in the Hoffman case does not compel any different conclusion. Holdcroft Transp. Co. v. Commissioner of Internal Revenue, 8 Cir., 153 F.2d 323.

Since the loss sustained here was not that of the taxpayer, no deduction can be allowed. Brigham v. United States, D.C., 38 F.Supp. 625.

The conclusion is: complaint dismissed with costs.

