GREGGAR P. SLETTELAND AND VIRGINIA M. SLETTELAND, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 516–63.    Filed February 8, 1965.

Greggar P. Sletteland, pro se.
*Jerry M. Reinsdorf*, for the respondent.

#### OPINION

PIERCE, *Judge:* The respondent determined a deficiency in the income taxes of the petitioners for the taxable calendar year 1960 in the amount of $4,442.74.

The sole issue for decision is whether section 642(h) of the 1954 Code and the regulations promulgated thereunder furnish warrant for the principal petitioner's deduction of $17,512 on his 1960 return, representing an alleged excess of deductions over gross income of the estate of his deceased father, upon the asserted termination of the estate in its fiscal year ended February 20, 1960.

All of the facts were stipulated. The stipulated facts, together with the exhibits identified therein, are incorporated herein by reference. A summary of the stipulated facts is as follows:

The petitioners, Greggar and Virginia Sletteland, are husband and wife, residing in Glenview, Ill. They filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue in Chicago. Greggar Sletteland will be hereinafter referred to as the petitioner.

In about the year 1951, petitioner's father, Perry A. Sletteland (hereinafter called Perry), became liable as endorser on a series of promissory notes which he had endorsed in earlier years as a member of a partnership whose business had failed. The amount of such liability in 1951 was $27,487.70. At about this same time, Perry assigned to the noteholders the cash surrender value of several insurance policies on his life, as collateral security for the payment of his liability to the noteholders. In addition, the proceeds of said policies payable upon Perry's death, while payable to his wife (and petitioner's mother, Margaret T. Sletteland, hereinafter called Margaret), were also encumbered in favor of the noteholders.

Thereafter, while he lived, Perry paid $10,467.82, plus interest, on these notes, which payments were claimed as deductible business losses

by Perry on his tax returns for the years when he made payment. The deductions so claimed were not disallowed by the Internal Revenue Service.

On February 20, 1959, Perry died while a resident of Carmel, Calif., and his will, wherein Margaret was named executrix and sole beneficiary, was filed with the county clerk of Monterey, Calif. However, pursuant to the laws of California relating to the administration of small estates, Perry's estate was administered without formal probate.

The only assets left by Perry were a bank account having a balance of $36.73; personal effects of nominal value; and claims of Perry against third parties, which were then estimated to be worth no more than $2,000. The insurance policies mentioned above had, immediately prior to Perry's death, a total cash surrender value of $15,651.22; and the proceeds payable upon his death were $26,050.99. Also, at the time of Perry's death, the balance of his obligations on the above-mentioned notes which he had endorsed, was $17,019.88, plus current interest.

Following Perry's death, and prior to July 31, 1959, Margaret used her own personal assets to discharge Perry's indebtedness. This action relieved Perry's estate of all liability on the notes; and it freed the insurance policies from the burdens of the assignment as collateral, and it also freed the proceeds thereof from the encumbrance to which they had been subjected by Perry. Margaret then elected to receive the entire $26,050.99 of proceeds as annuities during her life.

The total amount so expended by Margaret in paying off the notes and interest was $17,475.64, consisting of $17,019.88 for principal and $455.76 for interest. The balance of the accrued interest on the notes, $36.73, was paid by means of the funds in Perry's bank account at the time of his death. Margaret also used her own personal assets to pay the expenses of Perry's last illness and burial, which payments were also made prior to July 31, 1959. There were no other administration expenses or expenses of any nature, connected with closing the estate.

Margaret retained Perry's personal effects. However, in an instrument drafted by her son (the petitioner herein) in August 1959, which he thereupon transmitted to Margaret for her signature, which she orally assented to by telephone at some date between January 1 and February 20, 1960, and which she thereafter signed and returned to petitioner on October 10, 1960—Margaret, acting both individually and as executrix of Perry's estate, "sold, assigned, transferred and set over" to the present petitioner, "all of my rights, title and interest in and to the property (other than personal effects) and claims against others (including U.S. Income Tax refund claims) of Perry A. Slette-land, deceased, bequeathed to me as sole beneficiary under his Last Will

and Testament." This instrument also contained, *inter alia*, the following provisions:

[i]n consideration of the legal and other services of Greggar P. Sletteland, including tax accounting, and other related services, of an estimated value of not less than Five Thousand Dollars ($5,000.00), heretofore performed and to be performed during the remainder of 1959, in connection with the following:

interim management and dissolution of Slatausin Syndicate, a partnership in which Margaret T. Sletteland was the principal partner; all matters connected with the Estate of Perry A. Sletteland, deceased; and all matters connected with management of the investments of Margaret T. Sletteland; * * *

[Here followed the words of sale, assignment, and transfer to the petitioner, which are quoted in the last preceding paragraph of text.]

On or about May 31, 1960, a "U.S. Fiduciary Income Tax Return" (Form 1041) was filed for the estate of Perry A. Sletteland, deceased, by Margaret T. Sletteland, executrix. On said return, there was no gross income reported; however, there were deductions claimed for interest in the amount of $721.74 and capital losses of $17,019.88, aggregating a "taxable loss" of $17,741.62 which was marked "distributable to beneficiary." Margaret, as executrix, attached a statement to the fiduciary return, wherein she stated that the above deductions had not been allowed as deductions from the gross estate of the decedent under the applicable Federal estate tax law, and that she waived all right to have such items allowed at any time as deductions for Federal estate tax purposes.

Petitioners, on their joint Federal income tax return for the calendar year 1960, reported as income the claims assigned by Margaret to petitioner, in the amount of $2,000 (their then estimated value), as professional income of petitioner. On said return, petitioner deducted $17,512 as "Excess deductions for termination year of the Estate of Perry A. Sletteland taken as beneficiary succeeding to the property of said estate under Section 642(h) of the Internal Revenue Code." No other income was reported on petitioners' return for services rendered to, or on behalf of, Margaret, either as executrix or in her individual capacity.

The respondent, in his statutory notice of deficiency herein, determined that the claimed deduction of $17,512 was not allowable; and he explained his disallowance as follows:

It is held that the claimed deduction does not qualify under Section 642(h) of the Internal Revenue Code, and the applicable regulations. You have not established that you were a beneficiary of an Estate, that you bore any burdens relating to an Estate's loss or deduction, that you succeeded as a beneficiary to any Estate property, nor that the claimed excess deductions were in the last taxable year of the Estate ending in 1960. * * *

The claims against third parties mentioned in the instrument of assignment consisted of a claim for Federal income tax refunds of approximately $1,000, as well as claims against Perry's former partner and others. The tax refunds were later received and retained by Margaret, but no collections were ever made on the other claims. Petitioner discovered in March 1964 that Perry's estate was not entitled to any portion of the tax refunds paid to Margaret for the reason that these refunds related to her separate income. Petitioner also discovered in March 1964 additional information, which revealed that the other claims assigned to him were already valueless at the time of assignment and should not have been taken into his income.

Section 642(h) of the 1954 Code was a new provision, having no counterpart in the 1939 Code or prior revenue acts (see *Mary C. Westphal*, 37 T.C. 340, 344, appeal dismissed 317 F. 2d 365 (C.A. 8) ; H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 62, A201; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 83, 343). The provisions of the section are set out in the margin.[1]

Petitioner places reliance upon paragraph (2), which deals with the excess of deductions over gross income of an estate for the year of its termination, rather than upon paragraph (1), which deals with an estate's net operating loss carryover and capital loss carryover. An examination of the text of the statute makes it appear that for petitioner to prevail in the instant case, at least three elements must be established: (1) The estate of Perry Sletteland must have had an excess of deductions over gross income; (2) the estate's year of termination must have ended in 1960; and (3) petitioner must have been a beneficiary succeeding to the property of Perry's estate. The respondent asserts that none of these elements is present in the instant case; and accordingly that petitioner's claimed deduction has been properly disallowed.

Judicial authorities construing section 642(h)(2) are almost nonexistent. The only such case that our research has yielded is that of *Mary C. Westphal*, *supra*, which dealt with the question of the year of termination of the estate there involved. We do have the congres-

---

[1] SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(h) UNUSED LOSS CARRYOVERS AND EXCESS DEDUCTIONS ON TERMINATION AVAILABLE TO BENEFICIARIES.—If on the termination of an estate or trust, the estate or trust has—

(1) a net operating loss carryover under section 172 or a capital loss carryover under section 1212, or

(2) for the last taxable year of the estate or trust deductions (other than the deductions allowed under subsections (b) or (c)) in excess of gross income for such year,

then such carryover or such excess shall be allowed as a deduction, in accordance with regulations prescribed by the Secretary or his delegate, to the beneficiaries succeeding to the property of the estate or trust.

sional committee reports to aid us in applying the statute in the instant case. The report of the House Ways and Means Committee that accompanied the bill which ultimately was enacted as the 1954 Code, stated, in part, as follows:

Under subsection (d) [the House provision was sec. 662(d), which by Senate amendment was moved to sec. 642(h)] any * * * deductions in excess of gross income * * * upon the termination of an estate or trust are made available, in accordance with regulations, to the beneficiaries or remaindermen succeeding to the property. Under existing law, these unused loss carryovers are lost when the estate or trust terminates (*Cf. Charles Neave*, 17 T.C. 1237). [H. Rept. No. 1337, *supra* at A201.]

The report of the Senate Finance Committee was to the same effect, stating in part:

Under this provision [sec. 642(h)] unused loss carryovers and deductions in excess of gross income in the year of termination of the estate or trust are made available to the remaindermen to whom the property is distributed. Under existing law these unused carryovers and excess deductions are wasted when the estate or trust terminates.

    *        *        *        *        *        *        *

This provision is comparable to section 662(d) of the House bill, except that it limits the amount of deductions in excess of gross income which are made available to the beneficiaries to the deductions allowable in the final year of the estate or trust. * * * [S. Rept. No. 1622, *supra* at 83, 343.]

In the *Neave* case, cited in the House committee report, this Court had sustained the Commissioner's denial to the taxpayer, a remainderman-beneficiary of an inter vivos trust and of a testamentary trust created by his father, the right to deduct: (1) The excess over income of sundry administration expenses of the trusts which had been incurred and paid following the father's death but prior to winding up and making final distributions, and (2) certain capital loss carryovers from prior years that were available to the trusts but which were not of any tax benefit to said trusts, for the reason that the deductions mentioned in (1) exceeded the incomes of the trusts and there was nothing against which to offset the capital loss carryovers.

Bearing the foregoing in mind, we turn to a consideration of the particular facts and circumstances of the instant case. We think it would be well to discuss them within the framework of the three elements, mentioned above, which we feel were comprehended by section 642(h).

1. *Deductions in Excess of Gross Income of the Estate.*—In the case at bar, the estate of Perry A. Sletteland filed a fiduciary income tax return for a fiscal year ending February 20, 1960. On that return it reported no income whatsoever; but it claimed deductions for two items: (1) One was for so-called capital losses, in the amount of $17,019.88, and (2) the other was for interest in the amount of $721.74. The first and larger of these two items represented the decedent

Perry's liability as endorser on a series of promissory notes of a partnership of which he had been a member and which had failed and been liquidated many years prior to Perry's death. The second item represented interest on these liabilities. If these two deduction items represented *proper* deductions on the estate's income tax return, then it would seem that the first element had been satisfied. But, we do not think they were properly deductible by the estate on its fiduciary income tax return.

Section 641(b) of the 1954 Code provides that the taxable income of an estate or trust shall be computed in the same manner as in the case of an individual, except as otherwise provided in part I, subchapter J, dealing with the taxation of estates, trusts, and beneficiaries. The larger item of $17,019.88, that for Perry's liability as endorser on the partnership notes, was not an expense of the estate. The noteholders were claimants against the estate, just as any other creditors would have been. But claims are among the items that are deductible from a decedent's gross estate in computing his taxable estate for estate tax purposes (see sec. 2053(a)(3), allowing a deduction for claims against a decedent's estate), and are not charges against the income earned by an estate during the period of administration such as would, we think, be deductible under section 641(b), above mentioned.

In the case of *Estate of Jacob S. Hoffman*, 36 B.T.A. 972, the decedent at the time of his death was liable for his contributory share of a debt upon which he was a coguarantor. The debt was paid by the estate; and it claimed a loss deduction in respect thereof, on an income tax return filed for the 11½-month period following the death of the decedent. The Board of Tax Appeals (predecessor of this Court) sustained the respondent's disallowance of the deduction insofar as it was made up of the principal and the interest accrued up to decedent's death; and the Board explained its holding as follows (36 B.T.A. at 973–974):

The petitioner, the estate, claims the right to deduct $94,344.21 as a loss. The estate is a different taxpayer from the decedent. It is entitled only to those deductions allowed in the statute. The statute allows deduction for losses sustained during the taxable year:

"(1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *" The petitioner has not been specific in its claim as to whether (1) or (2) above applies. But it is clear that (1) does not apply because there is no showing that the estate was engaged in any trade or business. The estate in no way benefited by the transaction. It is obvious that the loss was not incurred in any trade or business of the estate because it was an old debt at the date of the death of the decedent and had no relation to any activity of the estate.

Nor does (2) apply. This taxpayer came into existence at the death of the decedent. The decedent became indebted to his coguarantor prior thereto.

The obligation to pay did not result from any transaction entered into by the estate for profit. (2) refers to a transaction entered into *by the taxpayer* for profit. When this taxpayer came into existence it had a certain amount of capital. Its capital consisted of the net estate of the decedent. Money then due the estate was a part of that capital and its later receipt did not represent the receipt of income by the estate, although it would have been income to the decedent. *Nichols* v. *United States*, 64 Ct. Cls. 241; *Ernest M. Bull, Executor*, 7 B.T.A. 993; *Walter R. McCarthy, Executor*, 9 B.T.A. 525; *William K. Vanderbilt et al., Executors*, 11 B.T.A. 291; *E. S. Heller et al., Executors*, 10 B.T.A. 53; *Estate of A. Plumer Austin*, 10 B.T.A. 1055; *Ella C. Loose, Executrix*, 15 B.T.A. 169, affd., 74 Fed. (2d) 147; *Mellie Esperson Stewart*, 18 B.T.A. 1010. Debts owed by the estate at that time likewise have no effect upon the income of the estate when later they are paid, although they might have been deductible by the decedent had he paid them. *John M. Brown, Executor*, 11 B.T.A. 1203; *Roy J. O'Neil et al., Administrators*, 31 B.T.A. 727; *Herbert G. Perry et al., Executors*, 32 B.T.A. 513; *Florence O. R. Lang et al., Executors*, 32 B.T.A. 522. It is only increases or decreases in the net estate with which this taxpayer started that affect its income.

\* \* \* Apparently this debt was then an old one, as is shown by the amount of the interest then due. Its amount was then fixed as is shown by the stipulation and by the fact that it was claimed and allowed as a deduction in determining the amount of the estate tax due. But however old the debt may have been, the present taxpayer took the estate of the decedent encumbered by this particular obligation in the amount of $93,827.24 and had it paid no more than $93,827.24 in discharging the debt, it would have suffered no loss whatsoever. \* \* \*

To the same effect, see also *Langford Investment Co.* v. *Commissioner*, 77 F. 2d 468, 471–472 (C.A. 5), affirming 22 B.T.A. 822, and *Sanborn* v. *United States*, 74 F. Supp. 894 (D. Mass.).

To the extent of the principal amount of the notes at Perry's death, it is our opinion that this was not a proper deduction on the income tax return of Perry's estate. However, as to any interest with respect to these notes that may have been paid by the estate, this would, as we shall show hereinafter, be a proper deduction by the estate, under the authority of section 691 (b).

But there is yet another reason which impels us to the conclusion that neither the principal nor the bulk of the interest was a proper deduction on the estate's income tax return. This reason is that, except for the minor amount of $36.73 of interest which was paid through utilization of that sum that was left in Perry's bank account, the estate did not pay any of the principal or interest. These amounts were paid by Perry's widow, Margaret, from her own personal assets. And while it is true that Margaret became entitled to receive sufficient insurance proceeds to reimburse her, these proceeds, under California law, did not pass through or become assets of Perry's probate estate. The cases make no distinction for that portion of the proceeds which equals the cash surrender value of the policy prior to the insured's death. *In re Burnett's Estate*, 47 Cal. App. 2d 464, 118 P. 2d 298; *Prudential Ins. Co. of America* v.

*Beck*, 39 Cal. App. 2d 355, 103 P. 2d 241. Hence we cannot say that actually or by implication Perry's estate made any payment to Perry's creditors, except to the extent of $36.73; and with that small exception, it could not properly claim any deductions.

It is true that section 691(b) permits an estate to deduct amounts paid by it in respect of a decedent's obligations, if the decedent had never taken a deduction and would have been able to do so if he had made payment prior to his death. However, section 691(b) is specifically limited to deductions or credits authorized by Code sections 33, 162, 163, 164, 212, or 611. In the instant case, Perry's payment of the principal amount of his obligations on the notes would have been deductible either under section 165 (as a loss) or under section 166(f) as a bad debt; and therefore these relief provisions would not apply to the amounts paid by the estate in discharge of the principal amount of Perry's obligations on the notes. As above indicated, section 691(b) would furnish warrant for the estate's deduction of the interest on these notes, since interest is deductible under section 163, one of the sections specifically mentioned in section 691(b). However, this warrant for deduction is largely unusable by the estate, since (except for the minor amount of $36.73), the estate did not pay any interest.

In summary, on this first point, we hold that the excess over gross income of deductions properly taken, for the fiscal year of Perry's estate ending February 20, 1960, was no more than $36.73.

2. We come to a consideration of another of the above-mentioned elements, to wit: That it was incumbent upon the petitioner to establish that he took the property from the estate of his father as a beneficiary. We do not think that the record will sustain his contention that he did so take the property.

What happened, as our summary of the stipulated facts shows, is that petitioner's mother, Margaret, was the sole beneficiary under the will of her husband, Perry. Subsequently, she "sold, assigned, transferred and set over" to petitioner the claims of Perry's estate against third parties, in consideration of petitioner's legal services that fell into three categories: (1) Matters connected with the management and dissolution of the partnership in which Margaret, individually, was the principal partner; (2) matters connected with Margaret's individual investments; and (3) matters connected with Perry's estate. In his own 1960 return, petitioner included in income $2,000 (the then estimated value of these claims), as fees for services to Margaret.

We believe that the foregoing establishes that petitioner acquired the claims property, not in the capacity of a beneficiary of an estate, but rather as an attorney for services rendered to a client. Put another way, he acquired said property by purchase, wherein the consideration moving from him as purchaser was his legal services.

Moreover, it seems evident that the underlying purpose of section 642(h) was to afford some measure of relief to heirs and those designated as takers under a decedent's will, who take diminished interests in a decedent's property as the result of the incurrence of expenses and losses by the estate. Thus the following regulations promulgated pursuant to the specific authority of section 642(h), provide:

SEC. 1.642(h)-3 Meaning of "beneficiaries succeeding to the property of the estate or trust".

(a) The phrase "beneficiaries succeeding to the property of the estate or trust" means those beneficiaries upon termination of the estate or trust who bear the burden of any loss * * *.

\* \* \* \* \* \* \* \*

(c) In the case of a testate estate, the phrase normally means the residuary beneficiaries (including a residuary trust), and not specific legatees or devisees, pecuniary legatees, or other nonresiduary beneficiaries. However, the phrase does not include the recipient of a specific sum of money even though it is payable out of the residue, except to the extent that it is not payable in full. On the other hand, the phrase includes a beneficiary (including a trust) who is not strictly a residuary beneficiary but whose devise or bequest is determined by the value of the decedent's estate as reduced by the loss or deductions in question. * * *

In the instant case, not only was petitioner not designated as a taker under Perry's will, but his interest in the property was in no way diminished as the result of the payment of Perry's obligations. True, it ultimately turned out that he did not realize anything on the claims which he acquired from Margaret; but this loss was occasioned by the insolvency of the third parties and by the fact that the income tax refund claim actually was Margaret's rather than Perry's and so should not have been transferred to petitioner in the first place. In short, petitioner did not suffer any loss by the payments in question. The parties have stipulated that the $2,000 estimated value of the claims assigned to petitioner, which he included in his own income tax return for 1960 as amounts received for services, will be eliminated from such income.

We hold that petitioner was not a beneficiary "succeeding to the property of the estate," as those words are used in section 642(h). Consequently, he is not entitled to deduction under its provisions— not even to the extent of $36.73 excess mentioned in our consideration of the first element.

3. In the light of the foregoing, it seems to us unnecessary to pass on the third element comprehended by section 642(h)—that the excess deductions be in the year of the termination of the estate.

To permit effect to be given to the above-mentioned stipulated adjustment,

*Decision will be entered under Rule 50.*