Darwin L. **RICHARDSON** and Wanda J. **Richardson, Plaintiffs,**

v.

**UNITED STATES of America, Defendants.**

**Civ. No. 73–2124 AAH.**

United States District Court, C. D. California.

Nov. 27, 1974.

Surr & Hellyer by Thomas H. Mc-Peters, San Bernardino, Cal., for plaintiffs.

William D. Keller, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., Elliott H. Kajan, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

### FINDINGS OF FACT

1. This is an action for the refund of income taxes collected from the plaintiffs by the defendant.

2. Darwin L. and Wanda J. Richardson reside in Needles, California, within the Central District of California.

3. The taxpayers filed their income tax return for fiscal year ending August 31, 1969 on February 16, 1970 and paid on that date the tax of $23,304.04 shown thereon. The income tax return was timely filed. The income tax return was prepared according to the cash receipts and disbursements method of accounting.

4. A Claim for Refund was filed by the taxpayers on January 4, 1972 seeking a refund of the $23,304.04 previously paid with respect to fiscal year ended August 31, 1969. The Claim for Refund was disallowed by the Internal Revenue Service on April 19, 1973.

5. Darwin L. Richardson (hereinafter called taxpayer by virtue of the fact that his wife was joined as a party plaintiff because of their filing a joint income tax return) is a medical doctor who practiced medicine in the State of Kansas until 1950, at which time he moved to De Leon, Texas where he practiced medicine until February, 1965.

6. Taxpayer, while residing in De Leon, Texas, practiced medicine through the operation of the Southwest Medical and Surgical Clinic and the De Leon Rest Home and owned several parcels of rental property and farms.

7. On November 18, 1963, an involuntary petition in bankruptcy was filed by taxpayer's creditors in the United States District Court, Northern District of Texas, Fort Worth Division.

8. Taxpayer was adjudicated bankrupt.

9. Taxpayer's unsecured debts subject to discharge in the bankruptcy proceeding amounted to $48,181.12. Taxpayer listed unsecured debts of $42,999.-80 but the unsecured debts were finally determined to be $48,181.12. Only $26,000.00 of the unsecured debts constituted debts incurred by taxpayer in his trade or business within the meaning of Section 162 of the Internal Revenue Code of 1954.

10. Certain properties were ultimately determined to be exempt from the bankruptcy proceeding. The properties were retained by taxpayer, free and clear of the claims of the unsecured creditors.

11. On March 17, 1964, taxpayer was discharged from all debts and claims, which amounted to $9,937.40.

12. The Final Meeting of Creditors was held on November 27, 1968.

13. The unsecured creditors were paid 79.37491 percent of their claims on December 9, 1968.

14. The Trustee filed his Final Report on November 6, 1968 and his Supplemental Final Report on December 13, 1968.

15. The bankruptcy proceeding terminated on March 27, 1969.

16. The Trustee filed fiduciary income tax returns for 1966, 1967 and 1968. The returns were prepared according to the cash receipts and disbursements method of accounting.

17. The assets which constituted property and/or real property within the meanings of Section 1221(2) and Section 1231(b)(1) of the Internal Revenue Code of 1954 were sold by the Trustee during the course of administration of the bankruptcy estate and resulted in a cumulative net loss over the years in the total amount of $27,729.55.

18. The Trustee never included in gross income or deducted from gross income or otherwise utilized for tax purposes the gains and losses from the sales of assets specified in Finding 17.

19. The Trustee never deducted or otherwise utilized for tax purposes the payments to the unsecured creditors in the total amount of $38,243.72.

20. The Trustee never deducted or otherwise utilized for tax purposes depreciation from the date of bankruptcy to the respective dates of sale of the assets sold by the Trustee during the course of administration in the cumulative amount of $7,723.90.

21. Any conclusion of law deemed to be a finding of fact is hereby found as a fact.

## CONCLUSIONS OF LAW

1. This action was brought under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a). The Court has jurisdiction over the parties and the subject matter of this action.

2. The substance of taxpayer's claim is that since the bankruptcy trustee did not enjoy the tax benefits which may have occurred during the administration of the bankruptcy estate, taxpayer was entitled to the cumulative losses generated therefrom in the year in which the bankruptcy estate terminated under Section 642(h) of the Internal Revenue Code of 1954 (26 U.S.C.), to wit, 1969. On the other hand, the government contends that any losses which may have been suffered by the trustee in bankruptcy are not statutory deductions which may be claimed by the taxpayer.

### A. *Tax Aspects of Bankruptcy Proceedings*

3. It is a basic assumption of the Internal Revenue Code that income, from whatever source, is normally taxed unless specifically excluded from taxation by Congress. The person who earned that income is typically the one taxed thereon. In a similar fashion, gain resulting from the disposition of property is taxed to the owner of that property. Deductions from income, on the other hand, are strictly matters of legislative grace and are not available to reduce otherwise taxable income unless specifically provided for by Congress. Moreover, the Code is set up in terms of an annual accounting period and the time for reporting income or taking permissible deductions will depend upon the method of accounting (cash or accrual) employed by the taxpayer. Sections 446 and 461 of the Internal Revenue Code of 1954.

4. Among other things, the Bankruptcy Act provides a means whereby a debtor can rehabilitate himself by wiping his credit slate clean and giving him a fresh economic start in life. Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Normally, income and profits are not present in a bankruptcy situation. To the contrary, such proceedings are usually noted for their absence of income and profits. When traditional principles of taxation are applied to a taxpayer undergoing bankruptcy proceedings, tax problems are posed. See, in general, Krause and Kapiloff, Bankrupt Estate, Taxable Income and the Trustee in Bankruptcy, 34 Fordham L.Rev. 401 (1966); Report of the Commission on Bankruptcy Laws of the United States, Part I, July, 1973, pp. 277–297.

5. Upon the filing of a petition in bankruptcy, the title to the debtor's assets is transferred by operation of law to the trustee. Bankruptcy Act, c. 541, 30 Stat. 544, Sec. 70(a) (11 U.S.C. § 110). The basic function of the trustee is to administer the estate and liquidate the debtor's property for the primary benefit of the creditors. The transfer of title of an individual debtor's assets to the trustee results in a new taxable entity—the bankrupt estate. Bloomfield v. Commissioner, 52 T.C. 745 (1965); Parkford v. Commissioner, 133 F.2d 249 (9th Cir. 1942), aff'g 45 B.T.A. 461 (1941). It has long been the government's policy, for income reporting and filing purposes, to tax this new entity in accordance with the provisions of sub-

chapter J of the Code (in particular Section 641 (26 U.S.C.)) which deals with decedent's trusts and estates, G.C.M. 24617, 1945 Cum.Bull. 235; Rev.Rul. 72–387, 1972–2 Cum.Bull. 632; Rev. Rul. 68–48, 1968 1 Cum.Bull. 301. See also In Re Loehr, 98 F.Supp. 402 (E.D. Wis.1950); In the Matter of Streck, 62–2 U.S.T.C. 9702 (S.D.Ill.1962). Contra, In the Matter of Kirby, 62–2 U.S.T. C. 9752 (S.D.Tex.1962) appeal dismissed by stipulation, 64–1 U.S.T.C. 6184 (5th Cir. 1964).[1]

6. Notwithstanding the creation of the bankrupt estate as a new and separate taxable entity, the individual bankrupt taxpayer still retains his tax identity and is required to file a tax return for the unbroken tax year separate from that which the trustee files for the post-bankruptcy portion of the year.[2] Martin v. Commissioner, 56 T.C. 1294 (1971); Rev.Rul. 72–387, *supra.* Additional tax aspects of a transfer of property to the bankruptcy trustee are that, pursuant to Section 1015(b) of the Internal Revenue Code, the trustee carries over the taxpayer's basis in the property and the taxpayer-debtor is not required to report any gain from the cancellation of indebtedness by reason for the bankruptcy proceedings. Treasury Regulations on Income Tax (1954 Code), § 1.-61–12(b), (26 C.F.R.).

7. On the other hand, when a corporate debtor undergoes bankruptcy and its assets are transferred to the trustee, the resulting corporate estate is not considered to be a taxable entity separate from the corporation. Treasury Regula-

tion § 1.641(b)–2(b), (26 C.F.R.). Thus, the trustee is required to file only one income tax return for an unbroken accounting period that includes the corporation's pre-bankruptcy activities as well as the post-bankruptcy petition activities of the trustee. Section 6012(b)(3) of the Internal Revenue Code (26 U.S.C.), Treasury Regulation § 1.6012–3(b)(4), (26 C.F.R.). The reason for this different treatment stems from both the administrative practicalities and the economic realties associated with corporations. The corporation's existence is integrally related to its assets. When these assets are transferred to the trustee and subsequently liquidated, there is no separate entity that remains independent of the assets controlled by the trustee. Accordingly, there is no practical reason for requiring the trustee to file more than one income tax return. See Krause and Kapiloff, *supra.*

8. It is against this background that the instant action must be considered. Here, the creditors of a cash basis individual taxpayer filed a petition for involuntary bankruptcy in November, 1963. When the bankruptcy proceedings terminated, the trustee had paid taxpayer's liabilities at the rate of approximately 80 cents on the dollar. In this connection the basic question proposed by the taxpayer arises; namely, whether taxpayer is entitled to the benefit of any unused net operating losses possessed by the bankrupt estate upon termination of the bankruptcy proceedings in his post-bankruptcy individual income tax returns.

---

1. In 1934, Congress enacted 28 U.S.C. § 960 requiring trustees and other officers appointed by federal court who are authorized to conduct any business be subject to all state and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation. It has been held that the taxability of the trustee extends to one who is merely liquidating rather than operating the business of the bankrupt. Missouri v. Gleick, 135 F.2d 134, 136–137 (8th Cir. 1943); In Re Mid American Co., 31 F.Supp. 601, 606 (S.D.Ill.1939).

2. Since the taxpayer-bankrupt's tax for the year is not determinable until after bankruptcy is initiated, the tax for that year is considered a post-bankruptcy liability of the individual, not payable out of the bankrupt estate but only from the bankrupt's exempt and after-acquired property, notwithstanding that the bankrupt's unspent earnings for the pre-bankruptcy portion of the year may have been transferred to the trustee.

## B. Taxpayer Is Not Entitled to Utilize Any Unused Net Operating Loss Which May Have Been Possessed by the Trustee Upon Termination of the Bankruptcy Proceedings

9. The focus here is on the termination of the bankrupt estate. There are no specific sections of the Code dealing with this question. Nevertheless, taxpayer claims entitlement to the unused net operating loss on the basis of Section 642(h) of the Code. Basically, that section provides that upon termination of an estate or trust, any unused Section 172 net operating loss carryover will be allowed to the beneficiaries succeeding to the property of the estate or trust. The government contends that the taxpayer here is neither within the letter nor spirit of the statute and therefore the deduction is unallowable. This conclusion is the only one consistent with both the Internal Revenue Code and the Bankruptcy Act.

10. The application of Section 642(h) is restricted to decedent's estates and trusts. Nowhere in either the statute, the regulations promulgated thereunder or in the Treasury's rulings (G. C.M. 24617, 1945 Cum.Bull. 235; Rev. Rul. 72–387, 1972–2, Cum.Bull. 632, Rev.Rul. 68–48, 1968–1 Cum.Bull. 301) is there any indication that Section 642(h) would apply to a bankrupt estate. The above-mentioned rulings, which state that for the purposes of reporting income and filing returns a bankrupt estate will be treated under subchapter J of the Code, do not mean that such an entity will be treated as a decedent's estate or trust for all purposes of taxation. Income is to be taxed unless specifically excluded by the Code. Deductions, on the other hand, depend strictly upon Congressional provisions. New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). There are no Code provisions that allow the disputed claims. In the absence of any such clear provisions, taxpayer is not entitled to the claimed post-bankruptcy deductions.

11. Taxpayer does not fall within the meaning of what constitutes a beneficiary under the statute. As described in the regulations, this term is limited to the beneficiaries of a decedent's estate or trust. Treasury Regulations § 1.-642(h)–3 (26 C.F.R.).[3]

12. Nor does the bankrupt taxpayer fall within the spirit of the statute. The statute is designed to afford some measure of relief to those who bear the burden of the loss for which a carryover is allowed, i.e., those who take a diminished interest in the property of the estate by reason of the estate's losses. Sletteland v. Commissioner, 43 T.C. 602 (1965). See also Treasury Regulations § 1.642(h)–3. In the bankrupt situation, those who bear the burden of the estate's losses are the bankrupt taxpayer's creditors and not the bankrupt himself. The creditors would then be the logical candidates for the benefit of any unused loss carryover. However, distributions received by creditors in bankruptcy proceedings are deemed a return of capital rather than taxable income.[4] The bankrupt-taxpayer actually benefits as a result of the bankruptcy proceedings. His credit slate is wiped clean

3. The bankrupt-taxpayer does not succeed to any property of the bankrupt estate except to the extent and in the very rare situation that the bankrupt estate is ultimately found to be solvent.

4. This is another example where certain provisions of subchapter J of the Code would not apply in the bankruptcy situation. Under the pass-through provisions of the Code, Sections 661 and 662 (26 U.S.C.), an estate (or trust) would be allowed deductions for distributions of the estate's property. These distributions would be reported as income by the distributees which are usually the heirs or beneficiaries. As applied to the bankrupt estate, these provisions would mean that the estate would get a deduction for the distributions or property to the creditors and the creditors, in turn, would be taxable on the distributions so received. This result is obviously unworkable and further illustrates the point that a bankrupt estate should not be treated as a decedent's estate for all purposes of taxation.

and he is given a fresh start. Additionally, as discussed, he receives certain tax breaks. To allow a taxpayer to receive the benefit of an unused net operating loss carryover would be affording him a head start rather than a fresh start. This is more than Congress intended to give him. See, Report of the Commission on the Bankruptcy Laws of the United States, *supra*. Cf., Kokoszka v. Belford, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, 1974.

13. Recently, the case of Mueller v. Commissioner, 34 A.F.T.R.2d 74–5522 (June 28, 1974), affirmed the portion of the Tax Court opinion (60 T.C. 36 [1973]), which is related to the issue found here. In supporting the government's reasoning, the Tax Court held, which the Fifth Circuit affirmed, the rule that Section 642(h) has no application to a bankrupt taxpayer. As the Court held (60 T.C., p. 45)—

> * * * it is not clear that a bankrupt estate is an estate for all purposes of taxation. Rev.Rul. 68–48, and its progenitor, G.C.M. 24617, deal solely with the duty of the trustee in bankruptcy to report income and the manner of reporting. Section 642 and the regulations thereunder deal only with estates and trusts, both inter vivos and testamentary, and nowhere describe or designate a bankrupt individual's estate as an estate within the meaning of the statute.
>
> Furthermore, it is unlikely that petitioner is "the beneficiary succeeding to the property of the estate or trust" within the meaning of 642(h). The bankrupt individual taxpayer is not included in the definition of "beneficiaries succeeding to the property of the estate or trust" in section 1.-642(h)–3, Income Tax Regs. (Footnote omitted.)

Moreover, it is apparent that the bankrupt taxpayer was not intended to be covered by the statute. It is evident that the purpose of section 642(h) was to afford some measure of relief to beneficiaries of estates who take diminished interest in the property of an estate as a result of losses by the estate.

14. Two other courts have touched upon this question without actually deciding it. Segal v. Rochelle, *supra,* and Bloomfield v. Commissioner, *supra.* Both these cases held that the trustee in bankruptcy, rather than the individual bankrupt, was entitled to the benefit of the *carryback* of the individual's net operating loss for the portion of the tax year preceding the date of the bankruptcy petition. Although neither case decided the issue present here, the Supreme Court in *Segal* did imply a negative answer to that question. The Court noted that the loss carryover was contingent at the time bankruptcy proceedings were terminated upon the individual bankrupt having sufficient future income to utilize the loss, and that this contingency might require keeping the bankrupt estate open an indefinite and undesirable period of time.

15. The legal position which the taxpayer has interposed can be resolved only by Congressional fiat—not by judicial decree. Consequently, from the uncontroverted evidence, the Court concludes that the losses sustained by the Trustee in bankruptcy do not constitute an allowable deduction within the meaning of Section 642(h), and hence are not properly deductible on taxpayer's income tax return for his fiscal year ending 1969.

16. Any finding of fact deemed to be a conclusion of law is hereby concluded as a matter of law.